IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
*Southern Division*

ELIZABETH (BETSY) RUCKER, *et al.*,        *

      Plaintiffs,                 *

v.                                    Case No.: GJH-20-0881

BRANCH BANKING AND TRUST        *
COMPANY,                     *

      Defendant.               *

\*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*

## MEMORANDUM OPINION

Plaintiffs Elizabeth (Betsy) Rucker, Sally K. Renuart, Robert F. Trotter, Jr., Dell H. Ross, Katherine Erwin, John Gray Bynum Erwin, Anne-Marie Trotter Grill, Constance K. Camunas, and David J. Kitchin, III (collectively, "Plaintiffs"), as beneficiaries of a testamentary trust created by William Y. Kitchin ("the WYK Trust"), bring this action against Branch Banking and Trust Company ("BB&T" or "Defendant"), now Truist Bank, as trustee of the WTK Trust. ECF No. 2. Plaintiffs bring six state law claims against BB&T: breach of fiduciary duty (Count I), negligence (Count II), conversion (Count III), negligent misrepresentation (Count IV), fraud (Count V), and specific performance (Count VI). *Id.* Pending before the Court is Defendant BB&T's Motion to Dismiss Plaintiffs' Complaint, or in the Alternative, Motion for Summary Judgment. ECF No. 4. No hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2018). For the following reasons, Defendant's Motion to Dismiss is granted.[1]

---

[1] Also pending before the Court is Plaintiffs' Motion for Leave to Supplement Opposition to Motion to Dismiss Plaintiffs' Complaint or, in the Alternative, Motion for Summary Judgment, ECF No. 11, which BB&T opposes, ECF No. 12. The Court denies Plaintiffs' Motion for Leave to Supplement because the supplemental exhibits "will not 'aid in this Court's decision'" whether to grant Defendant's Motion to Dismiss, or in the Alternative, Motion for Summary Judgment. *Styles v. Triple Crown Publ'ns*, No. WDQ-11-3759, 2012 WL 1964443, at \*2 (D. Md. May 30,

## I.     BACKGROUND[2]

William Y. Kitchin, Plaintiffs' uncle (or great uncle), passed away on April 5, 1982. ECF

No. 2 ¶ 7. Mr. Kitchin's Last Will and Testament (the "Last Will and Testament"), ECF No. 4-

2,[3] was dated October 29, 1980, and his Last Will and Testament, First Codicil (the "First

Codicil"), ECF No. 4-3—which amended the Last Will and Testament—was dated May 20,

1981. ECF No. 2 ¶ 8, ECF No 4-2; ECF No. 4-3. Mr. Kitchin's Last Will and Testament was

subject to probate from 1982 to 1988. ECF No. 2 ¶ 9.

The First Codicil states in paragraph eight (b) that: "The trustee shall pay quarter-

annually the income from 711 shares of United Technologies stock to the discretionary fund of

William H.G. Ticknor, Rector of St. James Episcopal Church at Lothian Parish, so long as he is

Rector or dies." ECF No. 2 ¶ 11; ECF No. 4-3 at 3.[4] Then, in paragraph nine, the First Codicil

states: "When the life tenancies of . . . my United Technologies stock . . . be terminated, said

stocks are to be distributed to my brothers and sisters or their heirs as above stipulated." ECF No.

2 ¶ 12; ECF No. 4-3 at 4. Plaintiffs allege they are beneficiaries under paragraph nine of the First

Codicil. *See generally* ECF No. 2.

Farmers National Bank of Maryland, along with two lawyers who are now deceased, was

the original trustee and managed the WYK Trust created by Mr. Kitchin's Last Will and

---

2012) (quoting *Casey v. Litton Loan Servicing LP*, No. RDB-11-0787, 2012 WL 502886, at *7 (D. Md. Feb. 14, 2012)). As the Court discusses below, *see infra* § II, the Court treats Defendants' motion as a Motion to Dismiss and dismisses Plaintiffs' claims under Fed. R. Civ. P. 12(b)(6). Thus, the Court will not consider materials outside the pleadings, including the supplemental exhibits attached to Plaintiffs' Motion for Leave to Supplement.

[2] Unless otherwise stated, the background facts are taken from Plaintiff's Complaint, ECF No. 2, and are presumed to be true.

[3] When evaluating the merits of a motion to dismiss, the Court considers documents that are explicitly incorporated into the complaint by reference and those attached to the complaint as exhibits. *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 166 (4th Cir. 2016). Additionally, the Court "may consider a document submitted by the movant that was not attached to or expressly incorporated in a complaint, so long as the document was integral to the complaint and there is no dispute about the document's authenticity." *Id.*

[4] Pin cites to documents filed on the Court's electronic filing system (CM/ECF) refer to the page numbers generated by that system.

Testament and First Codicil. ECF No. 2 ¶ 13. Farmers National Bank of Maryland merged into BB&T on or about October 11, 2003, and subsequently operated as part of BB&T. *Id.* ¶ 15. As a result of the merger, BB&T became the trustee and has since maintained and executed on the other sections of the Last Will and Testament. *Id.*

The United Technologies Corporation ("UTX") stock referenced in the First Codicil split on June 10, 1984. *Id.* ¶ 22. Consequently, on August 17, 1988, the WYK Trust was funded with 1,422 shares of UTX stock, instead of 711 shares. *Id.* ¶ 14. The UTX stock split again on December 10, 1996, and a third time on May 17, 1999. *Id.* ¶ 22. As of the time the Complaint was filed, the original 711 shares of UTX stock referenced in the First Codicil would total 11,376 shares if they had been retained by the trustee. *Id.* ¶ 23,

Mr. Tickner,[5] Rector of St. James Episcopal Church at Lothian Parish, retired on or about April 19, 2018. *Id.* ¶ 16. After learning of Mr. Tickner's retirement, on May 18, 2018, Plaintiff Rucker went to the Annapolis, Maryland branch of BB&T to determine the next steps that BB&T would take to distribute the shares of UTX stock to the beneficiaries identified in paragraph nine of the First Codicil. *Id.* ¶ 17. An employee of BB&T, Jason Haddaway, indicated that he would forward Plaintiff Rucker's information to BB&T's Wealth Management Department. *Id.*

According to Plaintiff Rucker's understanding, BB&T began researching the Last Will and Testament in June 2018. *Id.* On February 21, 2019, another employee of BB&T, Sarah Hancock, stated that BB&T could not locate the UTX stock and told Plaintiff Rucker that BB&T had no records of ever having managed the WYK Trust. *Id.* ¶ 18. However, later, on March 1, 2019, BB&T admitted that it was the trustee. *Id.* ¶ 19; ECF No. 7 at 9–10. Plaintiff Rucker

---

[5] Plaintiffs spell Mr. Tickner's name "Ticknor" in their Complaint. ECF No. 2 ¶ 11. The Court, however, uses the spelling provided in the First Codicil. *See* ECF No. 4-3 at 3.

subsequently learned from BB&T that, between November 1988 and June 1992, BB&T's predecessor, acting as trustee, had sold the 1,422 shares of UTX stock used to fund the WYK Trust and purchased mutual funds, which diminished the distributions to the Plaintiffs. ECF No. 2 ¶¶ 20, 21. Plaintiffs allege that BB&T and its predecessor sold the UTX stock "only to enrich itself from the sales" and that the "sales did not benefit the Plaintiffs and, in fact, deprived them of the significant value of the stock today. *Id.* ¶ 31.

Plaintiffs filed this civil action in the Circuit Court for Prince George's County, Maryland on February 27, 2020, alleging BB&T, as trustee, is liable to Plaintiffs for breach of fiduciary duty, negligence, conversion, negligent misrepresentation, fraud, and specific performance. ECF No. 1 at 2; ECF No. 2. BB&T timely removed the action to the United States District Court for the District of Maryland, Southern Division on April 2, 2020, ECF No. 1, and filed the instant Motion to Dismiss, or in the Alternative, Motion for Summary Judgment on April 8, 2020, ECF No. 4. Plaintiffs responded in opposition on July 15, 2020, ECF No. 7, and BB&T replied on July 29, 2020, ECF No. 10.

## II.     STANDARD OF REVIEW

To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555 ("a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and

conclusions, and a formulaic recitation of a cause of action's elements will not do.")).

The purpose of Rule 12(b)(6) "is to test the sufficiency of a complaint and not to resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006) (citation and internal quotation marks omitted). When deciding a motion to dismiss under Rule 12(b)(6), a court "must accept as true all of the factual allegations contained in the complaint," and must "draw all reasonable inferences [from those facts] in favor of the plaintiff." *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011) (citations and internal quotation marks omitted). The Court need not, however, accept unsupported legal allegations, *see Revene v. Charles Cty. Comm'rs*, 882 F.2d 870, 873 (4th Cir. 1989), legal conclusions couched as factual allegations, *Papasan v. Allain*, 478 U.S. 265, 286 (1986), or conclusory factual allegations devoid of any reference to actual events, *United Black Firefighters of Norfolk v. Hirst*, 604 F.2d 844, 847 (4th Cir. 1979).

When ruling on a motion to dismiss, a court's evaluation is generally limited to allegations contained in the complaint. *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 165–66 (4th Cir. 2016). However, courts may also consider documents explicitly incorporated into the complaint by reference. *Id.* at 166 (citing *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007)). In addition, a court may "consider a document submitted by the movant that was not attached to or expressly incorporated in a complaint, so long as the document was integral to the complaint and there is no dispute about the document's authenticity." *Id.* (citing *Sec'y of State for Defence v. Trimble Nav. Ltd.*, 484 F.3d 700, 705 (4th Cir. 2007)). A document is "integral" when "its 'very existence, and not the mere information it contains, gives rise to the legal rights asserted.'" *Chesapeake Bay Found. Inc.*, *v. Severstal Sparrows Point, LLC*, 794 F.

Supp. 2d 602, 611 (D. Md. 2011) (citation and emphasis omitted). Considering such documents does not convert a motion to dismiss to one for summary judgment. *Goldfarb v. Mayor & City Council of Balt.*, 791 F.3d 500, 508 (4th Cir. 2015).

Defendant's Motion is styled as a Motion to Dismiss or, in the Alternative, Motion for Summary Judgment. Here, however, the Court does not consider matters outside the pleadings and thus will treat BB&T's motion as a motion to dismiss. *See* Fed. R. Civ. P. 12(d).

## III.    DISCUSSION

In its Motion to Dismiss, BB&T raises five arguments that it believes are fatal to Plaintiffs' claims: (1) the Complaint is procedurally defective because it fails to request that the Court assume jurisdiction over the WYK Trust as required by the Maryland Trust Act, ECF No. 4-1 at 5–7; (2) Plaintiffs failed to bring the claims within the 3-year statute of limitations period, *id.* at 9–10; (3) the trustee has the authority to diversify the WYK Trust assets, *id.* at 7–9; (4) the allegations in the Complaint do not satisfy the pleading standard required by *Twombly/Iqbal*, *id.* at 10–16; and (5) the Complaint fails to state a claim for a jury trial and punitive damages, *id.* at 16. The Court addresses Defendant's first four arguments separately below. Because the Court finds that Plaintiffs fail to state a claim for relief and dismisses Plaintiffs' Complaint on that ground, the Court does not consider BB&T's final argument regarding Plaintiffs' requests for a jury trial and punitive damages.

### A.    The Maryland Trust Act (the "MTA")

BB&T first argues that, because Plaintiffs appear to be seeking relief under the MTA, they "must request that this Court assume jurisdiction over the Trust" and comply with the relevant formalities in making that request. ECF No. 4-1 at 5–7 (citing Md. Code Ann., Est. & Trusts § 14.5-201; Md. Rule 10-501, *et seq.*). This argument is largely unsupported and

ultimately unconvincing.[6]

As Plaintiffs correctly argue, this civil action is not an *in rem* action involving the current assets of the WYK Trust. Plaintiffs do not ask the Court to intervene in the discretionary management decisions concerning the assets of the WYK Trust, as contemplated by Md. Code Ann., Est. & Trusts § 14.5-201(a). *See Potts v. Potts*, No. 1:13–CV–1986–WDQ, 2015 WL 4528143, at *4 (D. Md. July 24, 2015) (finding that "an *in rem* action seeking judicial intervention over the administration of a trust and appropriateness of a distribution differs from the *in personam* claims for the various breaches of Trusts, conversion and unjust enrichment"). Rather, Plaintiffs bring *in personam* claims against Defendant that are separate and distinct from a hypothetical request for the Court to intervene in the discretionary disbursement of WYK Trust assets. *Id.* at *4–5 (distinguishing plaintiff's *in personam* claims for concealment and failure to provide accounting, breach of trust, conversion, and unjust enrichment from plaintiff's request for the Court to intervene in the discretionary management of the trusts, which required the "Court to wear the hat of a trustee in an *in rem* proceeding"). Plaintiffs request relief under Maryland state law for misconduct by the trustee, not distribution of current assets owned by the

---

[6] BB&T cites to two cases to support its argument, but it is unclear how those cases support BB&T's claim that Plaintiffs in the instant action are *required* to follow the procedural formalities outlined in Md. Rule 10-501. ECF No. 4-1 at 6. For example, BB&T cites to *Potts v. Potts*, No. 1:13-CV-1986-WDQ, 2015 WL 4528143, at *4–7 & n.6 (D. Md. July 24, 2015) seemingly for the proposition that, when dealing with *in rem* issues relating to a trust, the MTA requires that the party seeking relief request that this Court assume jurisdiction over the trust. ECF No. 4-1 at 5–6. The instant action, however, as discussed in this Memorandum Opinion, is not an *in rem* action. And, as *Potts* specifically states, "an *in rem* action seeking judicial intervention over the administration of a trust and appropriateness of a distribution differs from the *in personam* claims for the various breaches of the Trusts, conversion and unjust enrichment[.]" *Potts*, 2015 WL 4528143, at *4 (holding that a plaintiff's request—via a Motion to Compel—for the Court to exercise its equitable power pursuant to Md. Code Ann., Est. & Trusts § 14.5-201 and intervene actively in the administration of his trusts required a separate jurisdictional foundation from the original breach of trust and state law claims that were pending before the Court at the time of the plaintiff's motion). Similarly, BB&T cites *In re Donald Williams Revocable Trust*, for the proposition that *in rem* issues relating to a trust and *in personam* claims relating to the conduct of a trustee may be consolidated. 234 Md. App. 472, 485 (2017). While this may be true, nothing in *In re Donald Williams Revocable Trust* states that such issues *must* be consolidated or that the formalities which apply to *in rem* actions apply equally to *in personam* actions, which is what BB&T claims here. *See id.*

WYK Trust. Thus, because the instant action is not an *in rem* action, there is no need for
Plaintiffs to request the Court to intervene in the administration of the WYK Trust under Md.
Code Ann., Est. & Trusts § 14.5-201(a). Nor are Plaintiffs required to follow the procedural
formalities outlined in Md. Rule 10-501.

### B.      Statute of Limitations

Defendant argues that Plaintiffs' claims are barred by Maryland's three-year statute of
limitations. ECF No. 4-1 at 9–10. Plaintiffs respond that—under the discovery rule—the statute
of limitations did not begin to run until Plaintiff Rucker received—on March 1, 2019—a
communication from BB&T that outlined the transactions between 1988 and 1992 through which
the trustee sold all the shares of UTX stock owned by the WYK Trust. ECF No. 7 at 9–10.

In Maryland, a litigant has three years from the date it accrues to file a civil action.[7] Md.
Code. Ann., Cts. & Jud. Proc. § 5-101; *see Juliano v. Juliano*, 372 A.2d 1084, 1090–91 (Md. Ct.
Spec. App. 1977) (applying three-year limitations period in action to recover trust property). To
determine when a cause of action accrues, Maryland courts follow the discovery rule. *Bank of
New York v. Sheff*, 854 A.2d 1269, 1275 (2004). Under the discovery rule, the limitation period
begins when "the plaintiff has knowledge of circumstances which would cause a reasonable
person in the position of the plaintiff to undertake an investigation which, if pursued with
reasonable diligence, would have led to knowledge of the alleged tort." *Pennwalt Corp. v.
Nasios*, 550 A.2d 1155, 1163 (Md. 1988) (internal quotations and punctuation omitted).

Under Fed. R. Civ. P. 8(c), the statute of limitations is an affirmative defense to be raised

---

[7] The Court notes that, effective October 1, 2018, Maryland enacted a one-year statute of limitations for most breach
of trust actions. Md. Code Ann., Est. & Trusts § 14.5-904. However, to trigger the one-year limitations period,
trustees must provide to the beneficiaries a report that adequately discloses the existence of a potential claim and
informs the beneficiary or the beneficiary's representative of the time allowed to bring a judicial action. *Id.* The one-
year statute of limitations is not at issue here.

in the pleadings, "and is not usually an appropriate ground for dismissal." *Gray v. Metts*, 203 F. Supp. 2d 426, 428 (D. Md. 2002). However, dismissal under Fed. R. Civ. P. 12(b)(6) on statute of limitations grounds is nonetheless appropriate "when the face of the complaint clearly reveals the existence of a meritorious defense." *Id.* (citation omitted); *Goodman v. Praxair, Inc.*, 494 F.3d 458, 464 (4th Cir. 2007) (stating that Rule 12(b)(6) dismissal on statute of limitations grounds may occur in the "relatively rare circumstances" when "all facts necessary to the affirmative defense clearly appear *on the face of the complaint*" (emphasis in original) (internal quotations and punctuation omitted)). The defendant has the burden of establishing the affirmative defense of statute of limitations. *Goodman*, 494 F.3d at 464.

In the instant case, it is not clear from the face of the Complaint when Plaintiffs should have known about the misconduct at issue here, thereby triggering the limitations period. Plaintiffs allege that they did not become actually aware of the misconduct until March 1, 2019, when Plaintiff Rucker received the information from BB&T about the 1988 to 1992 sales. ECF No. 2 ¶¶ 20–21; ECF No. 7 at 9–10. Plaintiffs also allege they did not request information regarding the UTX stocks until May 18, 2018—which is within the three-year limitations period—less than a month after the retirement of Mr. Tickner, the event triggering Plaintiffs' entitlement to the trust assets at issue. ECF No. 2 ¶ 17. Accordingly, "because the facts alleged do not clearly indicate that [Plaintiffs] reasonably should have discovered" the misconduct before February 27, 2017, dismissal on statute of limitations grounds is inappropriate. *Potts v. Potts*, No. WDQ-13-1986, 2014 WL 4060031, at *8 (D. Md. Aug. 13, 2014); *see, e.g.*, *Goodman*, 494 F.3d at 464–66 (reversing dismissal of Maryland breach of contract claim on statute of limitations grounds, because the complaint did not reveal the date of breach or the date plaintiff should have discovered the breach under the discovery rule); *see also Doe v.*

*Archdiocese of Washington*, 689 A.2d 634, 639 (Md. Ct. Spec. App. 1997) ("When the viability of a statute of limitations defense hinges on a question of fact, . . . the factual question is ordinarily resolved by the jury, rather than by the court.").[8]

### C.     The Trustee Has Authority to Diversify the WYK Trust Assets

Because it impacts many of the individual claims, the Court next addresses BB&T's argument that, to the extent Plaintiffs' claims are based on BB&T breaching the terms of the WYK Trust, Plaintiffs' claims fail because the trustee has authority to diversify the WYK Trust assets and thus Defendant's sale of the UTX shares was authorized. BB&T is correct.

As a preliminary matter, when interpreting a trust, "[o]ne of the fundamental rules of construction is that the intention of the [settlor] must govern if consistent with the rules of law"—*i.e.* when construing a trust, "the paramount concern of the court is to ascertain and effectuate the [settlor's] *expressed intent*." *Vito v. Grueff*, 160 A.3d 592, 602 (Md. 2017) (emphasis added). "This expressed intention must be gathered from the language of the entire trust, particularly from the clause in dispute, read in the light of surrounding circumstances at the time the trust was created." *Bucolo v. Van Dyke*, No. 3408, 2020 WL 3603270, at *4 (Md. Ct. Spec. App. July 2, 2020) (internal quotation marks omitted) (quoting *In re Matter of the Albert G. Aaron Living Tr.*, 181 A.3d 703, 710 (Md. 2018)). Specifically, courts must give effect to the express meaning of the settlor's words, rather than what the court presumes the intent of the settlor to be. *Vito*, 160 A.3d at 602–03. Maryland courts generally employ the following methodology to determine the intent of the settlor:

---

[8] Defendants argue that BB&T had no obligation to provide remainder beneficiaries, like Plaintiffs, with statements showing when the UTX stock was sold 30 years ago, but Plaintiffs had a right to request those statements at any time—which they did not. ECF No. 10 at 8 (citing *Jacob v. Davis*, 738 A.2d 904, 912–13 (Md. Ct. Spec. App. 1999) for the proposition that remaindermen of testamentary trusts are entitled, by common law, to request and obtain accounting of trusts). From the record currently before it, the Court cannot determine as a matter of law that Plaintiffs should have discovered the alleged misconduct by Defendant prior to Plaintiff Rucker's May 2018 inquiry. *Potts v. Potts*, No. WDQ-13-1986, 2014 WL 4060031, at *8 n.11 (D. Md. Aug. 13, 2014).

> The process of construction of trust provisions is the same as that used in the construction of wills, and essentially involves three steps. The premise is that the intent of the settlor or testator controls. That intent is first sought by careful examination of the language of the trust clause in question, giving the words in that clause their ordinary meanings. If the question cannot be resolved by reference to the clause alone, the court will examine the entire trust instrument to determine the settlor's intent and purposes; where necessary they apply statutory or court rules of construction or presumptions. The third step becomes necessary when the intent or meaning of the settlor or testator cannot be determined by reference to the provisions of the trust instrument itself, for example, if the language is ambiguous. Then, the court admits extrinsic evidence to assist it in determining the meaning and effect of the particular clause.

*Id.* (quoting Amy Morris Hess et al., Bogert's Trusts and Trustees § 182 (2016)).

The Court considers the language of the two documents creating the WYK Trust—the Last Will and Testament and the First Codicil—and finds that William Y. Kitchin, the settlor, authorized the trustee of the WYK Trust to sell the UTX stock at issue. The Court need not consider any extrinsic evidence to assist in determining the meaning and effect of the trust instrument at issue here. *See Purifoy v. Mecantile-Safe Deposit & Tr. Co.*, 398 F. Supp. 1075, 1077 (D. Md. 1974) ("The basic function of a court in the construction of wills or deeds of trust is to ascertain and effectuate the intention of the testator or settlor."); *Frank v. Frank*, 253 A.2d 377, 382 (Md. 1969) ("Clear and unambiguous words in a will must be given the meaning they customarily and normally have[.]").

First, the Court considers the clauses specifically referencing the UTX stock at issue in this action. These clauses are found in the First Codicil:

> The Trustees shall pay quarter-annually the income from 711 shares of United Technologies stock to the Discretionary Fund for William H.G. Tickner, Rector of St. James Episcopal Church at Lothian parish, so long as he is Rector or dies.
>
> . . .
>
> Subsequent to the death of the survivor of my daughter and me, the trustees shall distribute . . . the remainder of the corpus of the trust, as then constituted except that the life or limited beneficiaries of my Calvert Bank and Trust Company stock, my United Technologies stock and Ferry Landing Woods, Inc. stock, may still be

> living, equally to those of my brothers and sisters . . . or their heirs per stirpes.
> When the life tenancies of my Calvert Bank and Trust Company stock, my United
> Technologies stock and my Ferry Landing Woods, Inc. stock be terminated, said
> stocks are to be distributed to my brothers and sisters or their heirs as above
> stipulated.

ECF No. 4-3 at 3–4. Plaintiffs argue that this language required the trustee to retain the
shares of UTX stock at issue. ECF No. 7 at 4–6. The Court agrees that this is a possible
interpretation of the clauses in the First Codicil but does not agree that this language
unambiguously directs the trustee to retain such shares. The language does not specifically
address the retention of any type of stock but rather is focused on which beneficiary gets
which assets and at what time. Plaintiffs' interpretation is not the only possible
interpretation of these clauses nor is it necessarily the correct one.

Thus, the Court next considers the entirety of the trust instrument, *see Vito*, 160
A.3d at 602–03, and finds that Plaintiffs' interpretation is inappropriate in light of the
remaining language in the instrument. Specifically, Item Five of the Last Will and
Testament—which the First Codicil ratified, confirmed, and republished, ECF No. 4-3 at
4—states that:

> In addition to any powers given by law or otherwise, and not by way of limitation
> of any such powers, my personal representative and trustee are authorized and
> empowered, at any time and from time to time, in their *absolute discretion*:
>
> 1.  To hold and retain all or any property received from my estate or any other
> source, without regard to any law or rule of court concerning diversification, risk,
> or non-productivity;
>
> 2. To invest or reinvest (or leave temporarily uninvested) any funds in any
> property, real or personal, of any kind of nature, including without limitation
> stocks (whether common, preferred or otherwise), bonds (secured or unsecured),
> obligations, mortgages, other securities, and interests in any of the foregoing
> without regard to any law or rule of court prescribing or restricting investments
> for fiduciaries;
>
> . . . .

4. To sell, exchange, partition, or otherwise dispose of any property, real or personal, at public or private sale, for such purposes and upon such terms, including options and sales on credit, with or without security.

. . . .

8.  In respect of any stock or other securities forming part of my estate or any trust created herby . . . , generally, to take all action in respect to any such securities as could be done by an absolute owner;

. . . .

14. To exercise all power and authority, including any discretion, conferred in this instrument, with respect to all accumulations of income under this instrument and with respect to all property held under a power in trust . . . .

ECF No. 4-2 at 5–9 (emphasis added). While Item Five of the Last Will and Testament gives the trustee the authority to retain property received from the estate, retention is not required. *Id.* Rather, it is within the "absolute discretion" of the trustee whether to hold and retain property; whether to invest or reinvest any funds in any property, specifically including stocks; and whether to sell or otherwise dispose of any property. *Id.* This authorization expressly extends to "*all* the property held under a power in trust[,]" which would include the UTX stock. *Id.* at 9 (emphasis added). Thus, the Court concludes that Defendant was authorized, under the terms of the instrument creating the WYK Trust, to sell the shares of UTX stock at issue and consequently dismisses Plaintiffs' claims—to the extent the claims are based on Defendant allegedly breaching the terms of the WYK Trust—on that basis.[9]

### D.    Failure to State a Claim

BB&T's fourth argument is that that the claims in Plaintiffs' Complaint are insufficiently

---

[9] The Court's conclusion is also supported by Maryland law regarding trusts and estates. The discretion provided by the trust instrument at issue here aligns with the general role of a trustee under Maryland law. Specifically, "[a] trustee shall administer as a prudent person would, by considering the purposes, terms, distributional requirements, and other circumstances of the trust" and, in fulfilling this standard, must "exercise reasonable care, skill, and caution." Md. Code. Ann., Est. & Trusts § 14.5-804. Moreover, a corporate trustee is obligated to "[d]iversify investments unless, under the circumstances, the fiduciary reasonably believes it is in the best interests of the beneficiaries or further the purposes for which the fiduciary was appointed not to diversify[.]" *Id.* § 15-114.

pleaded and thus the Court should dismiss the Complaint for failure to state a plausible claim for relief under *Twombly*, 550 U.S. 544, and *Iqbal*, 556 U.S. 662. The Court analyzes each of Plaintiffs' claims below, finds each count insufficiently pleaded, and dismisses each claim under Fed. R. Civ. P. 12(b)(6).

### 1.    Count I: Breach of Fiduciary Duty

"To establish a breach of fiduciary duty as an independent cause of action, a plaintiff must show: (i) the existence of a fiduciary relationship; (ii) breach of the duty owed by the fiduciary to the beneficiary; and (iii) harm to the beneficiary." *Plank v. Cherneski*, 231 A.3d 436, 466 (Md. 2020) (citation and internal quotation marks omitted). In the instant case, Plaintiffs have failed to sufficiently allege a breach of duty.[10]

Plaintiffs allege in their Complaint that Defendant breached numerous duties to Plaintiffs by selling the UTX stock—"apparently only to enrich itself from the sales"—instead of following the clear terms of the WYK Trust. ECF No. 2 ¶ 31. However, as discussed above, Defendant, as trustee of the WYK Trust, had authority under the trust instrument and Maryland law to sell the UTX stock at issue. *See supra* § III.C. Moreover, Plaintiffs' conclusory allegation that Defendant only sold the UTX stock to enrich itself from the sale is unsupported by any factual matter included in the Complaint. *See United Black Firefighters of Norfolk*, 604 F.2d at 847 (stating that courts need not accept conclusory factual allegations devoid of any reference to actual events); *see also* Md. Code Ann., Est. & Trusts § 14.5-903 ("Absent a breach of trust or the applicable standard of care, a trustee is not liable to a beneficiary for a loss or depreciation in the value of trust property or for not having made a profit."). Thus, Plaintiffs have failed to adequately allege that Defendant breached a duty to Plaintiffs by selling the shares of UTX stock

---

[10] BB&T challenges neither the existence of a fiduciary relationship nor the existence of harm to the beneficiaries—nor could it.

in question.

Additionally, Plaintiffs' claim that BB&T breached its fiduciary duty to Plaintiffs by failing to inform Plaintiffs of the UTX stock sales and failing to provide accurate accounting. ECF No. 2 ¶ 30. Yet, there is nothing in the trust instrument that requires the trustee to provide such information to remainder beneficiaries without their requesting the information, nor is the Court aware of such a requirement under Maryland law. *See Jacob v. Davis*, 738 A.2d 904, 912 (Md. Ct. Spec. App. 1999) (discussing that, under Maryland law, the contingent remainderman has standing to seek and accounting, while not mentioning a requirement that the trustee provide such information without receiving a request). Moreover, while there was a delay, Defendant ultimately provided information regarding the UTX stock sales in response to Plaintiff Rucker's inquiry. ECF No. 2 ¶ 21.

Since Plaintiffs have failed to adequately allege that Defendant breached its fiduciary duties to Plaintiffs, the Court dismisses Count I under Fed. R. Civ. P. 12(b)(6).

### 2.    Count II: Negligence

Generally, "[t]o state a claim for negligence a party must show 1) that the defendant was under a duty to protect the plaintiff from injury, 2) that the defendant breached that duty, 3) that the plaintiff suffered actual injury or loss, and 4) that the loss or injury proximately resulted from the defendant's breach of the duty." *Hamilton v. Kirson*, 96 A.3d 714, 727 (Md. 2014) (internal quotations and citations omitted). Plaintiffs again fail to adequately allege a breach of duty.

Plaintiffs' negligence claim is premised on the same duties Plaintiffs articulated in their breach of fiduciary duty claim (Count I). ECF No. 2 ¶ 34 ("duty to exercise reasonable care and skill by, among other items, following the terms of the trust, acting in the best interests of the beneficiaries of the trust, communicating the sales of the UTX stock, providing a timely and

proper accounting, and to distribute the UTX stock to Plaintiffs"). Similarly, Plaintiffs rely on the same breaches of duty alleged in Count I to support Defendant's supposed liability for negligence. *Id.* ¶ 35 ("In taking the actions alleged above, and in failing to take the actions as alleged above, BB&T (and its predecessor Farmers National Bank of Maryland) breached their duties of care and skill to Plaintiffs."). Consequently, Plaintiffs' negligence claim fails for the same reasons Plaintiffs' breach of fiduciary duty claim fails, *see supra* § III.D.1, and the Court thus dismisses Count II under Fed. R. Civ. P. 12(b)(6).

### 3.    Count III: Conversion

Under Maryland law "[c]onversion is any 'distinct act of ownership or dominion exerted by one person over the personal property of another in denial of his right or inconsistent with it.'" *First Union Nat'l Bank v. N.Y. Life Ins. & Annuity Corp.*, 152 F. Supp. 2d 850, 854 (D. Md. 2001) (quoting *Interstate Ins. Co. v. Logan*, 109 A.2d 904, 907 (Md. 1954)). In order to state a claim for conversion, a plaintiff must sufficiently allege there has been a "wrongful deprivation of a person of property to the possession of which he is entitled." *Id.* Plaintiffs base their conversion claim on Defendant's sale of the UTX stock, which Plaintiffs allege was wrongful and without permission or justification. ECF No. 2 ¶ 38. However, as discussed above, the Court finds Defendant had the authority to sell the UTX stock in question and thus the sale is not wrongful such that it would support Plaintiffs' conversion claim. *See supra* §§ III.C, III.D.1. Consequently, the Court dismisses Count III of Plaintiffs' Complaint for failing to state a claim upon which relief can be granted.

### 4.    Count IV: Negligent Misrepresentation

Under Maryland law, the following elements are required to assert a claim for negligent

misrepresentation:

> (1) the defendant, owing a duty of care to the plaintiff, negligently asserts a false statement;
>
> (2) the defendant intends that his statement will be acted upon by the plaintiff;
>
> (3) the defendant has knowledge that the plaintiff will probably rely on the statement, which, if erroneous, will cause loss or injury;
>
> (4) the plaintiff, justifiably, takes action in reliance on the statement; and
>
> (5) the plaintiff suffers damage proximately caused by the defendant's negligence.

*Lloyd v. Gen. Motors Corp.*, 916 A.2d 257, 273 (Md. 2007) (internal quotation marks and citations omitted). Thus, for Plaintiffs to effectively plead their asserted negligent misrepresentation claim, they must sufficiently allege that they justifiably relied on a misrepresentation by BB&T and suffered compensable injury as a result. *Cent. Truck Ctr., Inc. v. Cent. GMC, Inc.*, 4 A.3d 515, 526 (Md. Ct. Spec. App. 2010) (citing *Gourdine v. Crews*, 955 A.2d 769, 791 (Md. 2008); *Lloyd*, 916 A.2d at 273).

Here, the allegations in Plaintiffs' Complaint are nothing more than "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," and thus "do not suffice." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). As an initial matter, the Complaint does not specifically describe which statements Plaintiffs believe to be false, although the Court could infer it was Sarah Hancock's statement on February 21, 2019, that "BB&T still could not locate the UTX stock" and that "it had no records of ever having managed the trust." ECF No. 2 ¶ 18. Plaintiffs confirm this understanding in their opposition to the instant motion. ECF No. 7 at 17.

However, even assuming BB&T's February 2019 statement satisfies the first element of a negligent misrepresentation claim, Plaintiffs have failed to sufficiently plead justifiable reliance and damages. Instead, Plaintiffs conclusively assert that "Plaintiffs justifiably took

action in reliance on" BB&T's false statements "and suffered injuries and/or loss proximately caused by the negligence of BB&T[.]" ECF No. 2 ¶ 40. It is unclear, however, what actions Plaintiffs took in reliance on BB&T's statement or how Plaintiffs were harmed, especially since BB&T corrected its statement only a few days later, on March 1, 2019. ECF No. 7 at 9–10. Thus, the Court also dismisses Count IV under Fed. R. Civ. P. 12(b)(6) for failure to state a claim.

### 5.      Count V: Fraud

To state a claim for fraud, under Maryland law, the plaintiff must demonstrate:

> (1) that a representation made by a party was false; (2) that either its falsity was known to that party or the misrepresentation was made with such reckless indifference to truth to impute knowledge to him; (3) that the misrepresentation was made for the purpose of defrauding some other person; (4) that that person not only relied upon the misrepresentation but had the right to rely upon it with full belief of its truth, and that he would not have done the thing from which damage resulted if it had not been made; and (5) that that person suffered damage directly resulting from the misrepresentation.

*Campbell v. Indymac Bank, FSB*, No. CCB-09-3182, 2010 WL 419387, at *3 (D. Md. Jan. 29, 2010) (quoting B.N. v. K.K., 538 A.2d 1175, 1182 (Md. 1988)). Plaintiffs' allegations fall far short of this standard. Again, assuming the false statements referenced in Plaintiffs' fraud claim are Ms. Hancock's February 2019 statements, the fact that BB&T corrected these statements a mere days later weighs against finding that Defendant had the requisite intent required for fraud under Maryland law. Additionally, similar to the deficiencies of Plaintiffs' negligent misrepresentation claim, *see supra* § III.D.4, Plaintiffs fail to adequately allege justifiable reliance or damages sufficient to support a claim of fraud. Thus, the Court dismisses Count V pursuant to Fed. R. Civ. P. 12(b)(6).

### 6.      Count VI: Specific Performance

Plaintiffs withdraw their claim for specific performance, ECF No. 7 at 17–18, and thus

the Court dismisses Count VI as well.

***

Because Plaintiffs have failed to sufficiently plead any of the six claims presented in its Complaint, the Court dismisses Plaintiffs' Complaint in its entirety pursuant to Fed. R. Civ. P. 12(b)(6).

## IV.    CONCLUSION

For the foregoing reasons, Defendant's Motion to Dismiss, or in the Alternative, Motion for Summary Judgment, ECF No. 4, is granted. A separate Order shall issue.

Date: <u>March    14, 2021</u>                                 <u>    /s/                            </u>
                                                          GEORGE J. HAZEL
                                                          United States District Judge

19